THOMAS J. CLEMENT, appellant,

*v.*

YOUNG AMUSEMENT COMPANY and THEODORE J. LAPRES, respondents.

[Submitted March 27th, 1906. Decided November 19th, 1906.]

An unsigned draft of lease of property for a term of six years does not satisfy the statute of frauds so as to authorize the court of chancery to decree its execution and performance.

On appeal from a final decree advised by Vice-Chancellor Grey.

*Mr. Howard Carrow* and *Mr. Joseph R. Wilson* (of the Philadelphia bar), for the appellant.

*Messrs. Thompson & Cole,* for the respondents.

The opinion of the court was delivered by

GARRETSON, J.

This case involves the application of the statute of frauds.

The appellant alleges that he entered into an agreement with the defendant for a lease of certain premises, for a term of six years, at an annual rental of $3,000, and that a lease in writing was prepared containing the terms of the letting, which was assented to both by the appellant and the defendant, the amusement company, and although the same was never signed by either of the parties to the lease it, in connection with the circumstances in the case, sufficiently satisfied the statute of frauds. The appellant by the bill in this case seeks to enforce this lease.

The amusement company admits negotiations with the appellant for a lease, but denies that any agreement was ever reached by the parties.

It denies that William E. Shackelford, its manager, was authorized by the company to make an agreement for this lease, and it nowhere appears that John L. Young, its treasurer, was so authorized.

The appellant testified that on the 29th of June, 1903, he negotiated with Shackelford for a lease upon the terms above stated, paid $50 on account of the rent and took from Shackelford the following receipt:

"JUNE 29th, 1903.

"Received of M. J. Clement fifty dollars on account of candy stand now being occupied by T. Lapres for the year nineteen hundred and four.

"YOUNGS AMUSEMENT CO.,

"$50.        W. E. SHACKELFORD, *Mgr.*"

The appellant further testifies that he caused a draft of a lease to be prepared by his counsel, which embodied the agreement he had made with the defendant's manager; that he took it to Young, its treasurer, and left it with him, and he made some alterations in it, and that appellant and Young went over it together and some other alterations were made; Young expressed his satisfaction with it and appellant was also satisfied with it and said he would sign it; that he would go and fix it up and would meet Young at the office of the company's counsel to sign that lease, saying there was no use changing it, having agreed upon it. It does not appear whether the appellant procured a new copy of the lease which had been altered or took that same copy with him, or in fact had any copy of the lease with him, but he testifies as follows:

"I went to Thompson & Cole's office, and there sat the three [assuming he means the counsel, Shackelford and Young] in there; Shackelford jumped up with another lease; shoved that in my face, and said, 'You sign this lease or nothing; you shan't change a letter or word in it;' I said, 'I came to sign the lease me and the captain had agreed upon,' and he said, 'You sign that or nothing;' I said, 'I don't know whether the captain will let me sign that—will you, Captain?' he said, 'Oh, yes, I will let you sign it;' I said, 'Let me take this up to my lawyers; I want to get a little advice on it. Will you let me take it out?' Shackelford said, 'I don't know whether the captain will let you take it out—will you, Captain?' 'Yes, I will let you take it.' I said, 'You know I want to get a little legal advice in these things.'"

He says he carried it up to Carson & Godfrey, his attorneys; they looked over the lease, and in pursuance of what they did he did not sign it.

It seems, from this testimony, that the appellant and the company never reached any agreement as to the terms of the lease.

But, assuming that the draft of the lease which the appellant says was altered and agreed to by Young, and which he is now seeking to enforce, set forth the terms of the agreement between the parties, and that Shackelford was authorized to make the agreement and Young was authorized to make alterations in it, it was never signed by either of the parties to it, and so did not satisfy the requirements of the statute of frauds.

The receipt above mentioned is some evidence of negotiations between the parties and an agreement as to something, but it contains none of the terms of the lease which the appellant claims was agreed upon.

There was never any delivery of possession of the premises in question to the defendant, nor any evidence to show any expenditure of money under the contract or in part performance of the contract. There is some testimony as to the purchase of two movable machines to be used in connection with the business proposed by the appellant to be carried on in the premises, and also some expenditure in connection with the removal of some glass doors or screens from another place of the appellant to be used in the premises in question, but these were no more expenditures in the carrying out the contract than would be the cost of a stock of goods to be placed in a store agreed to be leased or of the furniture intended to be used therein.

The decree dismissing the bill is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.

*For reversal*—None.